UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID WALSH,

          Plaintiff,                        Case No. 1:24-cv-10456

v.                                                Honorable Thomas L. Ludington
                                                    United States District Judge

FIRST NATIONAL BANK OF OMAHA,

                                                      Honorable Patricia T. Morris
          Defendant.                     United States Magistrate Judge
_____/

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTIONS, ADOPTING REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING PLAINTIFF'S COMPLAINT**

Plaintiff David Walsh got scammed. After providing his personal identification information to an unknown individual purporting to work for Amazon, Plaintiff discovered $3,000 worth of cryptocurrency charges on his credit card account with Defendant First National Bank of Omaha. Despite agreeing to notify Defendant of all alleged billing errors in writing, Plaintiff called Defendant and initiated a fraud claim. After Defendant denied Plaintiff's claim, Plaintiff sued and alleged Defendant did not conduct an adequate investigation, in violation of the Fair Credit Billing Act, 15 U.S.C. § 1666, and its implementing regulation.

After discovery, the Parties filed cross motions for summary judgment. The undersigned referred both motions to Magistrate Judge Patricia T. Morris, who issued a report (R&R) recommending this Court grant Defendant's Motion and deny Plaintiff's Motion. Currently before this Court are Plaintiff's two objections to the R&R. As explained below, both lack merit. So the objections will be overruled, the R&R will be adopted, Defendant's Motion for Summary

Judgment will be granted, Plaintiff's Motion for Summary Judgment will be denied, and Plaintiff's Complaint will be dismissed.

## I.
### A.

In December 2020, Plaintiff David Walsh applied for and received a First Bank of Omaha (the "Bank" or "FNBO") credit card. ECF No. 14-4 at PageID.86. As part of this process, Plaintiff signed a Card Member Agreement and agreed to notify Defendant of any alleged billing errors in writing. ECF No. 15-1 at PageID.135 ("You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.").

Fast-forward to July 2023. Plaintiff attempted to return a $30 television wall-mount bracket that he purchased on Amazon.com. ECF No. 14-2 at PageID.63. Notably, Plaintiff does not recall whether he used his FNBO credit card for this purchase. *See id.* at PageID.70. In the past, Plaintiff returned items purchased from Amazon as most people do—by logging into his account, initiating a return for the specific order, and printing out the return label "without ever speaking to anyone." *Id.* at PageID.65. But not this time. This time, for reasons unknown, Plaintiff searched "Amazon PH" on Google and called the first number that popped up on his phone. *Id.* at PageID.64. An unknown person answered and said he worked for Amazon. *Id.* at PageID.66. When Plaintiff said that he wanted to return his bracket, the unknown man responded that Amazon was updating its billing system and thus needed Plaintiff's personal information, including his zip code, social security number, driver's license, and a contemporaneous "selfie" to verify his identity. *Id.* at PageID.68. After Plaintiff provided this personal identification information, the unknown man told Plaintiff to "call back tomorrow" because his return would take "24 hours." *Id.* at PageID.67.

Notably, Plaintiff does not provide any proof that this fishy phone call occurred. But this is the story Plaintiff told the Bank—and continues to tell this Court—after banxa MetaMa ("Banxa"), a cryptocurrency merchant, charged $3,000 on Plaintiff's FNBO account on July 14, 2023.[1] *See* ECF No. 14-3 at PageID.78. That same day, Plaintiff called the Bank, initiated a fraud claim, and explained his phone call with the unknown "Amazon" man. *See* ECF Nos. 14-5 at PageID.97; 14-2 at PageID.71–72.

But after a brief investigation, the Bank's Fraud Department denied Plaintiff's fraud claim on August 3, 2023. ECF No. 14-5 at PageID.106. According to FNBO policy, a charge is not fraudulent if the cardholder voluntarily provided their credit information, even if the cardholder was a "scam victim." ECF No. 14-4 at PageID.82–84, 86. And Plaintiff—when initially reporting the purported fraud to the Bank over the phone—admitted that he "provid[ed] his card number to the merchant." *Id.* at PageID.82; *see also* ECF Nos. 14-5 at PageID.106 (concluding Plaintiff "participated in the transaction"); 15-1 at PageID.125 (noting Plaintiff "gave his . . . credit card information to a third party"); *but see* ECF No. 14-2 at PageID.68 (testifying Plaintiff "can't remember" whether he provided his credit card or banking information to the unknown "Amazon" man).

In late August 2023, Defendant "referred" Plaintiff's claim from the Bank's Fraud Department to its "Dispute Department," which conducted another investigation, and requested information about the charges from Banxa. *See* ECF No. 14-5 at PageID.97, 99. Banxa responded on October 20, 2023 that the contested charges reflected Plaintiff's intentional purchase of

---

[1] Many anonymous investors have complained online that Banxa is a less-than-legitimate crypto merchant. *See Warning: Banxa*, REDDIT (Aug. 13, 2024), https://www.reddit.com/r/Bitcoin/comments/1eriro3/warning_banxa/; *Warning: Banxa is a Scam!*, REDDIT (Dec. 16, 2023), https://www.reddit.com/r/Bitcoin/comments/18jtcmy/warning_banxa_is_a_scam/.

".495443" shares of Ether.[2] *See id.*; ECF No. 15-1 at PageID.140. And Banxa evidenced this intentionality, explaining that, before the purchase could be effectuated and the cryptocurrency transferred, Plaintiff:

(1) Indicated that he read and agreed to Banxa's Terms and Conditions and Privacy Policy;
(2) Provided his date of birth and mailing address;
(3) Provided all credit card information;
(4) Verified his personal email address;[3] and,
(5) Verified his identity by providing a copy of his driver's license to match with a real-time "selfie," apparently captured on his mobile phone.

*See* ECF No. 15-1 at PageID.140–44. Moreover, Banxa explained that, from its perspective, the shares of Ether were transferred into a virtual wallet "nominated" by Plaintiff. *Id.* at PageID.140.

In addition to this evidence, FNBO's Dispute Department noted that the Bank's "fraud department sent text alerts" to Plaintiff when the Banxa charges were posted on July 14, 2023, and promptly "received [Plaintiff's] acknowledgement" that the charges were not fraudulent. *See* ECF No. 14-5 at PageID.97, 101. So, on October 20, 2023, the Bank denied Plaintiff's billing error claim. *See id.* at PageID.97–98, 101 ("As we find the charges were made by you, authorized by

---

[2] Ether (ETH) is the native cryptocurrency of Ethereum, a decentralized platform enabling the creation of decentralized applications using blockchain technologies. Liam Wright, *What is Ethereum and How Does it Work?*, FORBES (Sep. 29, 2024), https://www.forbes.com/sites/digital-assets/article/what-is-ethereum-how-does-it-work/ [https://perma.cc/TK6Z-T4ZM]. Ether is the "world's second-largest" cryptocurrency by market capitalization, second only to Bitcoin. *What is Ether (ETH)?*, INVESTOPEDIA (May 27, 2024), https://www.investopedia.com/terms/e/ether-cryptocurrency.asp [https://perma.cc/8DX2-M5UF]. As of the date of this Opinion and Order, .49 shares of ETH is worth around $770, far less than the $3,000 purchase price in 2023. *See Convert and Swap Ethereum ETH to United States Dollars USD*, COINBASE, https://www.coinbase.com/converter/eth/usd (last visited Apr. 17, 2025).

[3] Plaintiff admitted during his deposition that the email associated with the July 2023 Banxa purchase was, in fact, his personal email. *Compare* ECF No. 15-2 at PageID.153 *with* ECF No. 15-1 at PageID.141. Notably, from the deposition experts the Parties provided to the Court, Plaintiff did not provide this email address to the alleged "Amazon" scammer. *See* ECF Nos. 14-2 at PageID.62–75; 15-2 at PageID.151–63

you, and services were rendered; we find the charges to be valid and therefore, payment is due to [Banxa]. This dispute is resolved.").

Plaintiff called the Bank again in November 2023 to request further review of his claims and the disputed charges. *See id.* at PageID.98, 99. The Bank "reopened" Plaintiff's claim "that same day." *Id.* at PageID.98. But, on November 20, 2023, the Bank notified Plaintiff that it made "no error" and Banxa "provided sufficient evidence to prove the services were rendered" and Plaintiff intentionally purchased the cryptocurrency. *Id.* at PageID.99. To the extent Plaintiff wished to further dispute the charges, the Bank recommended he "contact [Banxa] directly." *Id.*

**B.**

But Plaintiff ran to federal court, instead. On February 23, 2024, Plaintiff sued the Bank and alleged it did not "conduct a reasonable investigation" into the disputed charges, in violation of the Fair Credit Billing Act (FCBA), 15 U.S.C. § 1666, an amendment to the Truth in Lending Act (TILA), and its implementing "Regulation Z," 12 C.F.R. § 1026.13. *See id.* § 1026.1(a). ECF No. 1 at PageID.4–5.

On March 22, 2024, the undersigned referred all pretrial matters to Magistrate Judge Patricia T. Morris. ECF No. 5; FED. R. CIV. P. 72. In December 2024, the Parties filed cross motions for summary judgment. ECF Nos. 14; 15. On March 27, 2025, Judge Morris issued a report (R&R) recommending that this Court grant Defendant's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and dismiss Plaintiff's Complaint. ECF No. 22.

The R&R began by noting that Plaintiff's Motion for Summary Judgement was "exclusively" focused on 15 U.S.C. § 1643, a section of the TILA which provides that cardholders cannot be liable for "unauthorized use[s]" of their credit card, except in six narrow, enumerated circumstances. *Id.* at PageID.216. But Plaintiff did not plead this "unauthorized use" claim in his

Complaint, which instead alleged Defendant failed to reasonably investigate the Banxa billing errors in violation of 15 U.S.C. § 1666 and its implementing regulation. *Id.*; ECF No. 1. Thus, the R&R concluded Plaintiff's Motion for Summary Judgment was entirely precluded. ECF No. 22 at PageID.215–16; *see also Kriegsmann v. Art of Dermatology, PLLC*, No. 23-11280, 2025 WL 470897, at *2 (E.D. Mich. Feb. 12, 2025) (distinguishing § 1643 unauthorized use claims and § 1666 billing error investigation claims, and denying a plaintiff's motion for reconsideration which asserted an unauthorized use claim when her complaint did not "reference or []suggest[]" such claim); *Mitchell v. Chase Bank USA NA*, No. CV-22-00435-TUC-RM, 2025 WL 743999, at *4 (D. Ariz. Mar. 7, 2025) (denying summary judgment on § 1643 unauthorized use claim when plaintiff's complaint only alleged a § 1666 billing error investigation claim).

Turning to the billing error investigation claim Plaintiff actually alleged, the R&R explained that 15 U.S.C. § 1666 requires cardholders to provide *written notice* of any alleged billing errors to their creditor as a precondition to suit. ECF No. 22 at PageID.217. But the R&R found Plaintiff failed to do so. *Id.* at PageID.217. Indeed, Plaintiff conceded during his deposition that he never filed any written notice about the Banxa charges with Defendant. *See* ECF No. 15-2 at PageID.163. Although Plaintiff argued that Defendant waived such written notice by "acknowledging" Plaintiff's "oral notice" over the phone, the R&R rejected this argument, citing recent nonbinding caselaw suggesting such waiver strayed from the express statutory text. ECF No. 22 at PageID.218 (citing *McIntosh v. Capital One Bank*, No. 23-3144, 2024 WL 3964234, at *3 (D. N.J. Aug. 28, 2024)).

On April 10, 2025, Plaintiff objected to the R&R. Defendant has not yet responded.

## II.

Under Civil Rule 72(a), a party may object to and seek review of a dispositive R&R within fourteen days of service. *See* FED. R. CIV. P. 72(b)(2). But all objections must be specific. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). Any objection that fails to identify specific portions of the R&R will not be reviewed. *See Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review[.]"). And an "'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before," is improper and invalid. *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Additionally, parties cannot "raise at the district court stage new arguments or issues that were not presented" before the R&R was issued. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

If a party makes a timely, specific objection, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). When reviewing a report and recommendation *de novo*, this Court must review at least the evidence that was before the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, this Court may accept, reject, or modify the Magistrate Judge's findings or recommendations. FED. R. CIV. P. 72(b)(3); *Peek v. Comm'r of Soc. Sec.*, No. 1:20-CV-11290, 2021 WL 4145771, at *2 (E.D. Mich. Sept. 13, 2021).

## III.

Plaintiff does not object to the R&R's conclusion that Plaintiff did not plead a 15 U.S.C. § 1463 "unauthorized use" claim. *See generally* ECF No. 23. Instead, Plaintiff filed two objections

regarding the R&R's treatment of his 15 U.S.C. § 1666 billing error investigation claim. *Id.* Each will be addressed in turn.

A.

Plaintiff first objects to the R&R's finding of fact that he did not provide Defendant with written notice of the contested Banxa charges. ECF No. 23 at PageID.224–25. Specifically, Plaintiff argues that, although he first notified Defendant of the contested charges over the phone to initiate his *fraud claim*, he later provided written notice to initiate his second *dispute claim*. *Id.* This objection will be overruled for two reasons.

First, the objection is invalid. As explained, objecting parties cannot raise "new arguments or issues that were not presented" before the reviewing magistrate judge. *Murr*, 200 F.3d at 902 n.1; *accord Meddaugh v. Gateway Fin. Serv.*, 601 F. Supp. 3d 210, 213 (E.D. Mich. 2022). Defendant specifically sought summary judgment because Plaintiff did not file written notice sufficient for his § 1666 FCBA claim. *See* ECF No. 15 at PageID.120–22. Plaintiff did not disagree, conceded he did not file any written notice, and instead argued that Defendant waived the written notice requirement by opening an investigation after Plaintiff's phone call. ECF No. 19. So Plaintiff cannot raise this "new" argument now.

Second, even if Plaintiff's objection was valid, it fails on the merits. Plaintiff contends he provided written notice after his first fraud claim was denied, because he "made a new dispute" asserting that he never received the crypto his credit card purchases reflected. ECF No. 23 at PageID.222–23. And, in so doing, Plaintiff certified in writing to Defendant that he did not "receive[] any goods or services from the transactions in dispute." *Id.* at PageID.223 (emphasis omitted). This argument mischaracterizes the record and ignores the express statutory requirements of 15 US.C. § 1666.

- 8 -

As a threshold note, the record reflects that Plaintiff never "made a new claim" after his first fraud claim was denied. To the contrary, *Defendant* referred Plaintiff's initial fraud claim—initiated via Plaintiff's July 14, 2023 phone call—to the Bank's Dispute Department to conduct a second investigation as a courtesy. ECF No. 14-4 at PageID.96 ("We do that [as a] service [for] our cardholders. . . . In this case fraud was not the best route of action due to [Plaintiff's] admission of . . . compromising his own card number. So we attempted recovery for the cardholder by pursuing the non-fraud route of merchandise not received.") And Plaintiff only provided his certified statement *after* Defendant referred his claim from the Fraud Department to the Dispute Department, and *after* Defendant specifically asked for such certification to "continue [its] investigation." ECF No. 14-7; *see also* ECF No. 23 at PageID.223.

Moreover, Plaintiff's certification cannot satisfy the written notice requirement of an FCBA § 1666 claim. That statute requires that a cardholder's written notice (1) "set[] forth or otherwise enable the creditor to identify the name and account number . . . of the [cardholder]," (2) "indicate[] the [cardholder's] belief that the statement contains a billing error and the amount of such billing error," and (3) "set[] forth the reasons for the [cardholder]'s belief . . . that the statement contains a billing error." 15 U.S.C. § 1666(a); 12 C.F.R. § 1026.13(b). Plaintiff's single sentence certifying that he did not receive any cryptocurrency from Banxa falls far short of this express written notice. And, "[a]bsent such a notice, none of the statutory duties on the part of [D]efendant under the FCBA [are] triggered." *Hayes v. Shelby Cnty. Tr.*, 971 F. Supp. 2d 717, 730 (W.D. Tenn. 2013) (citing *Conn–Burnstein v. Saks Fifth Avenue & Co.*, 85 F.App'x 430, 431 (6th Cir. 2003)).

Plaintiff does not disagree but argues the "lack of an account number or amount of the billing error" in his purported written notice "is immaterial because Defendant already had that

information." ECF No. 23 at PageID.224–25. But this argument bleeds into Plaintiff's second objection—that Defendant waived the express written notice requirement and had actual notice of Plaintiff's claims. That argument will be taken up below.

**B.**

In his second objection, Plaintiff argues Judge Morris erred as a matter of law in concluding Defendant did not waive the FCBA's written notice requirement by investigating Plaintiff's billing error claim. ECF No. 23 at PageID.226–29. She did not. On *de novo* review, the R&R correctly concluded that Defendant did not waive the FCBA's written notice requirement.

True, parties can waive statutory requirements "intended for [their] benefit." *Shutte v. Thompson*, 82 U.S. 151, 159 (1872); *see also United States v. Mezzanatto*, 513 U.S. 196, 201, 115 S. Ct. 797, 801, 130 L. Ed. 2d 697 (1995) ("[A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver[.]"); *United States v. Magouirk*, 468 F.3d 943, 947–51 (6th Cir. 2006) (affirming defendant's implicit waiver of his right to have the Sentencing Guidelines be only advisory as well as his right to have the district court consider the sentencing factors promulgated in 18 U.S.C. § 3553(a)). Indeed, at least one district court within this Circuit expressly concluded that a creditor can, theoretically, waive the FCBA's written-notice requirement for billing error investigation claims under 15 U.S.C. § 1666. *Andreae v. Cap. One*, No. 1:22-CV-618, 2024 WL 1579914, at *5 (S.D. Ohio Apr. 11, 2024).

But waiver must be intentional. *United States v. Olano*, 507 U.S. 725, 733 (1993). An implied waiver "requires conduct that evinces both knowledge of the right in question and an unequivocal intention to relinquish that right by taking actions inconsistent with retaining it." *Andreae*, 20024 WL 1579914, at *5 (citing *United States v. Lawrence*, 735 F.3d 385, 437 (6th Cir.

2013)); *see also Sandler v. All Acquisition Corp.*, 954 F.2d 382, 385 (6th Cir. 1992) ("The party's actions must evidence in some unequivocal manner an intent to waive, and must be inconsistent with any other intent." (cleaned up)).

So, the question becomes, did Defendant implicitly waive the FCBA's written notice requirement by investigating his claim in response to a verbal phone call? The answer is no. And the Southern District of Ohio's recent decision in *Andreae v. Capital One* explains why. There, like here, plaintiff Mark Andreae called Capital One and reported a fraudulent charge on his credit card account over the phone. *Andreae*, 2024 WL 1579914, at *1. And, like here, Capital One thereafter investigated, but later denied, the fraud claim. *Id.*. So, like here, Mr. Andreae sued and alleged Capital One violated the FCBA, 15 U.S.C. § 1666. *Id.* But, like here, Mr. Andrea conceded that he never provided written notice . *Id.* at *4. And, like here, Mr. Andrea attempted to argue that Capital One implicitly waived the written-notice requirement by investigating his claim. *Id.* at *5. But, like here, "[t]he problem" for Plaintiff is that Defendant's investigation does not "*clearly* and *unmistakably* evidence[]" its intent to "dispense with the FCBA's requirements—let alone constitute[] an action inconsistent with [Defendant's] desire to have [Plaintiff] comply with the statute's provisions." *Id.* at *5 (emphasis in original).

To the contrary, the record reflects Defendant wished to retain—not relinquish—the FCBA's written notice requirement. In Plaintiff's signed Credit Member Agreement, Defendant expressly instructed Plaintiff to provide written notice of any billing errors. ECF No. 15-1 at PageID.135. ("You must notify us of any potential errors <u>in writing</u>. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question."); *see also McIntosh*, 2024 WL 3964234, at *3 (finding bank defendant did not implicitly waive FCBA written notice requirement by investigating plaintiff's phone-call fraud claim because

the bank "expressly reserved its right to written notice . . . in the account agreement by requiring [p]laintiff to notify [it] of any potential billing errors in writing and stating that it would not necessarily investigate alleged billing errors raised over the phone").

In his objection, Plaintiff cites the same precedent he provided in response to Defendant's Motion for Summary Judgment. *Compare* ECF No. 19 at PageID.182–84 (citing *Mitchell v. JPMorgan Chase Bank NA*, No. CV-22-00435-TUC-RM, 2023 WL 5590635 (D. Ariz. Aug. 29, 2023)) *with* ECF No. 23 at PageID.226–29 (citing *Mitchell* and *Savitz v. Citizens Bank, N.A.*, No. 19CV0873, 2020 WL 128573 (W.D. Pa. Jan. 10, 2020)). Judge Morris already rejected this precedent as unpersuasive and "[un]sound." ECF No. 22 at PageID.218. Rightfully so.

In both *Mitchell* and *Savitz*, the district courts denied a creditor's motion to dismiss predicated on the cardholder plaintiff's failure to provide written notice to satisfy the FCBA. *See Mitchell*, 2023 WL 5590635, at *3; *Savitz*, 2020 WL 128573, at *4. True, to Plaintiff's point, both courts noted that the plaintiff had sufficiently *alleged* that the creditor defendant implicitly waived the written notice requirement by receiving actual notice and proceeding to investigate the cardholder plaintiffs' fraud claims. *Mitchell*, 2023 WL 5590635, at *3; *Savitz*, 2020 WL 128573, at *4. But, unlike *Mitchell* and *Savitz*, this case is at the summary judgment stage. Plaintiff cannot survive Defendant's Motion for Summary Judgment by simply *alleging* Defendant's implicit waiver. Instead, Plaintiff must point to evidence that would create a genuine dispute of material fact. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995) (noting the party opposing summary judgment must "put up or shut up on a critical issue"). He has not done so. *See McIntosh*, 2024 WL 3964234, at *3 (declining to follow *Mitchell* and *Savitz* at the summary judgment stage and noting that finding a waiver in such circumstances would "chill" creditors' "voluntary investigations of billing errors").

In sum, although Defendant thoroughly and promptly investigated Plaintiff's claim after receiving Plaintiff's phone call, doing so did not implicitly waive the FCBA's written notice requirement for 15 U.S.C. § 1666 claims. Because Plaintiff did not provide this written notice, Defendant is entitled to summary judgment. Plaintiff's objection to the contrary will be overruled, the R&R will be adopted, Defendant's Motion for Summary Judgment will be granted, and Plaintiff's Complaint will be dismissed.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Objections to Magistrate Judge Morris's Report and Recommendation, ECF Nos. 23, are **OVERRULED.**

Further, it is **ORDERED** that Magistrate Judge Morris's Report and Recommendation, ECF No. 22, is **ADOPTED**.

Further, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 15, is **GRANTED.**

Further, it is **ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 14, is **DENIED.**

Further, it is **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED.**

**This is a final order and closes the above-captioned case.**

Dated: April 24, 2025                    s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge